UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER B. HARGRAVE, | * | |
| PLAINTIFF | * | CASE: 1:08-cv-00682-JDB |
| | * | |
| VS. | * | |
| | * | |
| ACS HCM & STATE & LOCAL | * | |
| SOLUTIONS, | * | |
| DEFENDANT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING ARBITRATION

Pursuant to 9 U.S.C. §4, Defendant moves this Court to compel Plaintiff to arbitrate its claim in compliance with Affiliated Computer Services' Dispute Resolution Program. Further, Defendant moves this Court to dismiss, or in the alternative, to stay Plaintiff's claims pending arbitration pursuant to 9 U.S.C. §3. A Memorandum in Support of this Motion is attached hereto. For the reasons attached in the accompanying Memorandum, the Court should grant Defendant's Motion.

Respectfully submitted this 24th day of April, 2008.

/s/ Thomas J. Woodford
THOMAS J. WOODFORD **(DC Bar No. 416015)**
Jackson Myrick
The Kullman Firm, A Professional Law Corporation
Post Office Box 1287
Mobile, Alabama 36633
Telephone: (251) 432-1811

SAMUEL ZURIK
A. NICOLE SEALE
The Kullman Firm, A Professional Law Corporation
Post Office Box 60118
New Orleans, LA 70160
Telephone (504) 524-4162
Facsimile: (504) 596-4114
**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>24th</u> day of April, 2008, I caused to be served a true and correct copy of the foregoing Notice of Removal, by United States mail, postage prepaid, upon the following:

Roger B. Hargrave
Jessup Correctional Institution
Jessup Md. 20794

<u>/s/ Thomas J. Woodford</u>

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER B. HARGRAVE, | * | |
| PLAINTIFF | * | CASE: 1:08-cv-00682-JDB |
| | * | |
| VS. | * | |
| | * | |
| ACS HCM & STATE & LOCAL | * | |
| SOLUTIONS, | * | |
| DEFENDANT | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING ARBITRATION

Defendant, ACS HCM Solutions, (hereinafter referred to as "ACS" or "Defendant") is filing this Memorandum in Support of its Motion to Compel Arbitration and to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration. For the reasons set forth throughout this memorandum, Defendant's motion should be granted.

### I.    BACKGROUND

Roger Hargrave ("Hargrave" or "Plaintiff") was employed by ACS State and Local Solutions as a mail clerk from April 22, 2002 until March 28, 2005, when ACS terminated his employment for misuse of company property. (Affidavit of Don DeLorenz, attached as Ex. A.)

ACS has a comprehensive Dispute Resolution Program ("DRP"), which provides ACS employees with a mandatory system for settling workplace conflicts. Specifically, the DRP constitutes the *exclusive* means for ACS employees to resolve workplace disputes through the following four options: Open Door; Internal Conference; Mediation; and, Arbitration. (DRP, attached to Ex. A as Ex. A-1.) Notably, the Plaintiff signed an agreement to be bound by the

DRP on July 30, 2002. (Signature Page, attached to Exhibit A as Ex. A-2.) The DRP specifically provides:

> Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment.

(DRP at p. 7.)

The DRP was also referenced in ACS Employee Guidebook. (Employee Guidebook, attached hereto as Ex. B.) Specifically, the guidebook includes the following language:

> ACS has adopted a dispute resolution plan as the *exclusive* means of resolving the majority of work-related problems. Its purpose is to give employees flexible options for airing and settling almost every kind of workplace conflict . . . from minor, everyday misunderstandings to violations of employee protected rights. For any questions regarding this process or to file a complaint, please contact Human Resources or the Ombudsman at Ombudsman@acs-inc.com or call 866/667-9733.

(Employee Guidebook at p. 56.)

Accordingly, through the employee guidebook and through an acceptance and agreement to the DRP, Plaintiff was fully aware that the DRP constituted his exclusive means of resolving workplace disputes, and his continued employment demonstrated agreement with the DRP.

Inherent in the DRP is Plaintiff's obligation to resolve his alleged workplace disputes through one of the four options available, including the arbitration option. In the instant case, Plaintiff did not follow the DRP, but instead filed the instant lawsuit in the Superior Court of the District of Columbia1 alleging wrongful termination by his former employer, ACS. As a result, Defendant is filing the instant motion to compel Plaintiff to arbitration.

---

1 Defendant filed a Motion to Remove this matter to federal court on April 17, 2008.

## II.    ARGUMENT

### A.    Federal Policy Strongly Favors Enforcement of Arbitration Agreements.

The Federal Arbitration Act's ("FAA") primary purpose is to "enforce private agreements into which parties [have] entered." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625-26 (1985), citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  In enacting the FAA, Congress declared a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); see also Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 289 (2002).  To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." Mitsubishi Motors, 473 U.S. at 626.  Furthermore, the FAA mandates that any doubts as to the arbitrability of any issues be resolved, whenever possible, in *favor* of arbitration. Greentree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003).  The Supreme Court has stated:

> Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.  See also Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996).  Thus, arbitration agreements are favored and should be enforced.

### B.    The Parties' Agreement to Arbitrate Is Valid and Enforceable.

Under the FAA, arbitration agreements are enforceable when they are (1) written; (2) part of a contract or transaction involving interstate commerce; and, (3) valid under general principles of contract law.  9 U.S.C. § 2.  ACS' DRP satisfies all of these requirements.

### 1.    The Arbitration Agreement Is in Writing.

The arbitration provision in the DRP, and other related documentation described in Section I of this Memorandum, constitute the requisite "writing" under the FAA. To that end, the FAA requires only that arbitration agreements be in writing, not that the writing be signed by the parties to be bound. 9 U.S.C. § 2; <u>Valero Refining, Inc. v. M/T Lauberhorn</u>, 813 F.2d 60 (5th Cir. 1987); <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 846 (2d Cir. 1987).

The DRP was clearly in writing, which is all that is required under the FAA. (DRP; DeLorenz Affidavit.) Furthermore, Plaintiff signed an agreement to be bound by the DRP and was certainly aware of the DRP and *continued* his employment after signing the agreement. Accordingly, Defendant has met the FAA's writing requirement.

### 2.    The Employment Relationship with ACS Involved Interstate Commerce.

The term "involving commerce" is very broad and reaches to the full extent of Congress' power under the commerce clause. <u>Allied/Bruce Terminix Co. v. Dobson</u>, 513 U.S. 265, 274-75 (1995). As a multi-national corporation, ACS provides a full range of outsourcing services and solutions to businesses, government, and industry leaders. (See Exhibit A.) ACS operates facilities in every state and several countries, serving people from inside and outside Texas, utilizing interstate mail and travel systems, and recruiting and advertising outside Texas. ACS' employees have a far-flung network of company resources which they can and do access across state and country lines. (See Exhibit A.) Accordingly, ACS regularly and substantially affects interstate commerce.

Because ACS is engaged in interstate commerce, Plaintiffs' agreements to arbitrate, as incorporated into their employment relationships, easily fall within Congress' broad power over commerce. <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105 (2001). Moreover, the DRP

expressly invokes the FAA. (Ex. A-1 at p. 4.)  The United States Supreme Court has held that an express agreement to be governed by the FAA, like that set forth in ACS' DRP, is controlling. See In re Profanchik, 31 S.W.3d 381, 384-85 (Tex. App. – Corpus Christi, 2000).  Accordingly, the interstate commerce requirement has been met.

### C.    Plaintiff's Claim against ACS Is within the Scope of the Arbitration Provisions.

Plaintiffs have brought suit in this Court against ACS, alleging wrongful termination of their employment by ACS.  (Complaint.)

The DRP provides the exclusive and binding method by which all workplace disputes are resolved.  (DRP at p. 6; Employee Guidebook at p. 56.)  Specifically, the DRP applies to all disputes except "claims for workers compensation benefits or unemployment compensation benefits including claims under the ACS On-the-Job Injury Plan (OJIP) (Texas employees only.)"  (DRP at p.4.)  Furthermore, a "dispute" subject to arbitration under the DRP specifically includes reference to wrongful termination (which has been alleged in the instant Complaint). (DRP at pp. 2-3.)  The DRP's express inclusion of wrongful termination demonstrates how Plaintiff's claims are arbitrable.  Moreover, if there were any uncertainty as to whether Plaintiff's claims are covered by the DRP, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including under circumstances where the issue is the construction of the contract language.  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

Given the broad ambit of the contractual language, and the presumption favoring arbitration, Plaintiffs' claims are within the scope of his arbitration agreement.

### III.    CONCLUSION

The FAA mandates the enforcement of arbitration agreements.  Section 4 of the Act specifically authorizes a party aggrieved by another's failure to abide by its legal obligation to petition a court for an order compelling compliance.  9 U.S.C. § 4.  The FAA mandates that courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists, affording no discretion on this issue.  9 U.S.C. § 3, 4.  See also Dean Witter Reynolds, 470 U.S. 213; Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).

In this case, the indisputable facts demonstrate that (1) Plaintiff and ACS have an agreement to arbitrate, (2) the agreement encompasses Plaintiff's claim against ACS, and (3) Plaintiff has refused to honor their obligations under the agreement.  Thus, ACS is entitled, under the FAA, to an order compelling Plaintiff to pursue his claims, if at all, through arbitration under the terms and conditions of the DRP.

Moreover, because Plaintiff's sole claim against ACS is subject to arbitration, dismissal of his claim against ACS is the appropriate remedy.  As the Fifth Circuit noted in Alford:

> Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.  Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in a limited manner prescribed by law.

975 F.2d at 1164 (quoting Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc., 636 F. Supp 750, 757 (D.P.R. 1986)).

This Court should compel Plaintiff to arbitrate.  ACS' DRP contains a valid and enforceable arbitration requirement to which Plaintiff is bound.  Accordingly, Defendant respectfully requests that the Court grant its Motion to Compel Arbitration and to Dismiss or, in

the Alternative, to Stay Proceedings Pending Arbitration.  Additionally, Defendant requests that

this Court award attorneys' fees incurred in drafting and filing this Motion to Compel.

Respectfully submitted this 24th day of April, 2008.


/s/ Thomas J. Woodford
THOMAS J. WOODFORD (DC Bar No. 416015)
Jackson Myrick, The Kullman Firm PLC
Post Office Box 1287
Mobile, Alabama  36633
(251) 432-1811

SAMUEL ZURIK*
A. NICOLE SEALE*
The Kullman Firm
A Professional Law Corporation
Post Office Box 60118
New Orleans, LA 70160
Telephone (504) 524-4162
Facsimile: (504) 596-4114
COUNSEL FOR DEFENDANT


*Application for admission pro hac vice pending

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2008, I caused to be served a true and

correct copy of the foregoing Notice of Removal, by United States mail, postage prepaid, upon

the following:

Roger B. Hargrave
Jessup Correctional Institution
Jessup Md. 20794


/s/ Thomas J. Woodford

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ROGER B. HARGRAVE,          *      CIVIL ACTION NO.:
              PLAINTIFF     *
                            *      SECTION:
VS.                         *
                            *      JUDGE
ACS HCM & STATE & LOCAL     *
      SOLUTIONS,            *      MAGISTRATE NO.:
              DEFENDANT     *
                            *      MAGISTRATE:
* * * * * * * * * * * * * * * * * * * * * * * *

### AFFIDAVIT OF DON DELORENZ

BEFORE ME, the undersigned authority, personally came and appeared DON DELORENZ, who, upon being first duly sworn, did depose and state:

1.      I have personal knowledge of the facts set forth in this Affidavit. I am over 21 years of age, and I am in all respects competent to testify to the matter stated herein.

2.      I am currently Vice President of Human Resource Compliance and Governance for Affiliated Computer Services, Inc. ("ACS") and have been employed in that capacity since November 2001. ACS is a multi-national corporation which provides a full range of outsourcing services and solutions to businesses, government, and industry leaders. Although headquartered in Texas, ACS operates facilities in every state and several countries, serving people from inside and outside Texas, utilizing interstate mail and travel systems, and recruiting and advertising outside Texas. ACS' employees have a far-flung network of company resources which they can and do access across state and country lines.

3.      As Vice President of Human Resources and Compliance and Governance, I am familiar with the personnel records of Roger Hargrave, the company's policies and procedures,



including the ACS Dispute Resolution Program ("DRP"), and the ethics and new hire training undergone by both continuing and new employees.

4.    Mr Hargrave was hired by ACS on April 22, 2002 as a mail clerk. According to personnel documents, he was terminated on March 28, 2005 because he misused company property.

5.    ACS has a comprehensive Dispute Resolution Program ("DRP") that provides ACS employees with a mandatory system for settling workplace conflicts. (DRP, attached hereto as Ex. A-1.) Specifically, the DRP constitutes the exclusive means for ACS employees to resolve workplace disputes through the following four options: Open Door; Internal Conference; Mediation; and, Arbitration. Notably, the DRP automatically covered, and continues to cover, employere who accepted employment with ACS and continued their current employment with ACS after April 13, 2002, the effective date of the DRP. The DPR covers all legal claims by employees, with the exception of workers and unemployment compensation, between the employee and ACS and the employee and others bound by the DRP. Mr. Hargrave is bound by the DRP as it relates to his employment at ACS.

6.    Mr. Hargrave signed an acceptance of and agreement to ACS' DRP on July 30, 2002 as part of his employment application with ACS. (Acceptance attached as Ex. A-2.) The DRP is also included in ACS' Employee Guidebook

7.    ACS received a Notice and Acknowledgement of Service by Mail in civil action number 0001251-08, Roger B. Hargrave v. ACS HCM Solutions, on March 20, 2008. The notice was received by ACS' Legal Department on March 31, 2008.

Executed this ___/4th___ day of April, 2008.

DON DELORENZ

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 4th DAY OF April , 2007.

_____
NOTARY PUBLIC

My Commission Expires: April 16, 2010



TINA KORNEGAY
Notary Public
State of Texas
My Comm. Exp. 4-16-2010

*Affiliated Computer Services, Inc.*

# DISPUTE RESOLUTION PLAN

January 2002



EXHIBIT
A-1

# The ACS Dispute Resolution Plan

## 1. Purpose and Construction

The Plan is designed to provide a Plan for the quick, fair, accessible, and inexpensive resolution of Disputes between the Company and the Company's present and former Employees and Applicants for employment, related to or arising out of a current, former or potential employment relationship with the Company. The Plan is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms. It is not intended either to abridge or enlarge substantive rights available under applicable law, but does involve waiving the right to go to court. No part of the Plan alters the "at-will" employment relationship between the Company and its Employees. The Plan should be interpreted in accordance with these purposes.

## 2. Definitions

A. "AAA" means the American Arbitration Association. "JAMS" means Judicial Arbitration and Mediation Services.

B. The "Act" means the Federal Arbitration Act, 9 U.S.C. § 1, et seq., as mended from time to time.

C. "Company" means Sponsor and every subsidiary of Sponsor, any Electing Entity, any entity or person alleged to have joint and several liability concerning any Dispute, and all of their directors, officers, employees, and agents, every plan of benefits, whether or not tax-exempt, established or maintained by any such entity, the fiduciaries, agents and employees of all such plans, and the successors and assigns of all such entities, plans and persons; provided, however, that in the case of an Electing Entity, "Company" shall include the Electing Entity only to the extent provided in the Electing Entity's agreement to be bound by the Plan.

D. "Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:

    1. this Plan;

    2. the employment or potential reemployment of an Employee, including the terms, conditions, or termination of such employment with the Company;

    3. employee benefits or incidents of employment with the Company;

    4. any other matter related to or concerning the relationship between the Applicant or Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex,

2

religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress; or status, claim or membership with regard to any employee benefit plan;

5. an Applicant's application for employment and the Company's actions and decisions regarding such application; and

6. any personal injury allegedly incurred in or about a Company workplace.

"Dispute" includes all such matters regardless of when the events on which they are based occurred, including matters based on events occurring before the Employee became subject to this Plan (so long as such disputes were not previously asserted in a judicial forum) or after termination of the employment relationship.

E. "Electing Entity" means any legal entity, which has agreed to be bound by the Plan as provided herein.

F. "Employee" means any person who is or has been in the employment of the Company on or after the effective date of this Plan, whether or not employed at the time a claim is brought with respect to a Dispute, residing in the United States, or otherwise subject to the laws of the United States or any state, municipality, or other political subdivision of the United States.

G. "Applicant" means an individual who meets the minimum qualifications for a specific position and submits an employment application for the specific position.

H. " Party" means, with respect to a particular Dispute, affected persons and/or entities bound by this Plan.

I. "Plan" means this ACS Dispute Resolution Plan, as amended from time to time.

J. "Rules" means the ACS Dispute Resolution Plan Rules, as amended from time to time, which are applicable to mediation and arbitration.

K. "Sponsor" means Affiliated Computer Services, Inc. ("ACS"), and its successors, a Delaware Corporation, and its subsidiaries.

L. "OJIP" means the ACS On-The-Job Injury Plan applicable to certain Employees in Texas who are not covered under the Texas Workers' Compensation system.

M.    "Ombudsman" means any person or persons chosen by the Sponsor to facilitate resolutions to concerns that arise between the Parties.    ACS's Ombudsman can help by answering questions, acting as a go-between, reviewing options, getting the facts, helping "open doors," referring to other resources and helping employees help themselves. In performing this mission, the Ombudsman:

3

- serves as an information and communication resource and dispute resolution advisor;
- does not serve as an advocate for any person in a dispute within an organization;
- does not make binding decisions, mandate policies or adjudicate issues for the organization;
- uses his/her discretion whether to act upon a concern of an individual contacting the office;
- may initiate action on a problem he or she perceives directly;
- may help develop a range of options to resolve problems and facilitate discussion;
- maintains confidentiality concerning matters that are brought to his/her attention except when given permission to do otherwise, where there appears to be threat of harm, or where otherwise legally required;
- is an informal resource.

## 3. Name, Application and Coverage

A. The Plan shall be referred to as the "Affiliated Computer Services, Inc. Dispute Resolution Plan." Alternatively, it may be referred to as the "ACS Dispute Resolution Plan" or the "Dispute Resolution Plan. "

B. Until revoked by Sponsor pursuant to this Plan, this Plan applies to and binds the Company, each Employee and Applicant and the heirs, beneficiaries and assigns of any such person or entity; provided, however, that this Plan shall not apply to any Employee in a unit of Employees represented by a labor organization, or to the Company with respect to such employees, except to the extent permitted in an applicable collective bargaining agreement or lawfully imposed by the Company when no collective bargaining agreement is in effect.

C. Except as provided for herein, this Plan applies to any Dispute.

D. Notwithstanding anything to the contrary in this Plan, the Plan does not apply to claims for workers' compensation benefits or unemployment compensation benefits including claims under the ACS On The Job Injury Plan (OJIP) (Texas employees only).

E. Mediation and arbitration are only available for Disputes involving legally protected rights.

F. Notwithstanding any other provision hereof, any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met.

G. The enforceability and scope of the Plan shall be governed by the Act and federal law.

## 4. Resolution of Disputes

All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Plan and the Rules, by binding arbitration.

Prior to resolution by binding arbitration, the Parties may use the Open Door process, the Internal Conference Option, the services of the Ombudsman, or Mediation.

## 5. Confidentiality

A. The Dispute Resolution Plan ("Plan"), its Administrator, any subordinate administrators, the staff of the Plan and any other person
conducting conferences or serving as an impartial third party on behalf of the Plan in any in-house dispute resolution process conducted under
the auspices of the Plan, will hold matters reported under the Plan and related communications in confidence.  For purposes of requests by or subpoenas from any party that the Plan Administrator or any subordinate administrators, or any member of the staff of the Plan or person conducting conferences or serving as an impartial third party on behalf of the Plan in any in-house dispute resolution process conducted under the auspices of the Plan, provide testimony in any internal or external investigation, administrative hearing, or arbitration or litigation proceeding, the confidentiality standards described in this section attach to the Dispute Resolution Plan, rather than any individual disputant. This means that only the Plan, rather than any individual disputant, may waive confidentiality.

B. No employee shall be subject to any form of discipline or retaliation for initiating or participating in good faith in any process or proceeding under this Plan.

## 6. Amendment

A. This Plan may be amended by Sponsor at any time by giving at least 10 days notice (either by mail, delivery with salary stub, or posting on the Company intranet) to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

B. Sponsor may amend the Rules at any time by serving notice of the amendments on AAA or JAMS. However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

## 7. Termination

This Plan may be terminated by Sponsor at any time by giving at least 10 days notice of termination to current Employees. However, termination shall not be

effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination.

## 8. Applicable Law

A. The Act shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, or settlements under the Plan or the Rules.

B. Other than as expressly provided herein, or in the Rules, the substantive legal rights, remedies, and defenses of all Parties are preserved. In the case of arbitration, the arbitrator shall have the authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

C. Other than as expressly provided herein, or in the Rules, the Plan shall not be construed to grant additional substantive, legal, or contractual rights, remedies or defenses which would not be applied by a court of competent jurisdiction in the absence of the Plan, including applicable time periods in which to bring such claims.

D. Notwithstanding the provisions of the preceding subsection, in any proceeding before an arbitrator, the arbitrator, in his/her discretion, may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award.  The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power that the arbitrator may have under applicable law.

## 9. Administrative Proceedings

A. This Plan shall apply to a Dispute pending before any local, state or federal administrative body or court unless prohibited by law.

B. Participation in any administrative or judicial proceeding by the Company shall not affect the applicability of the Plan to any such Dispute upon termination of the administrative or judicial proceedings. A finding, recommendation or decision by an administrative body on the merits of a Dispute shall have the same legal weight or effect under the Plan as it would in a court of competent jurisdiction.

## 10. Exclusive Remedy

Proceedings under the Plan shall be the exclusive, final and binding method by which Disputes are resolved.

## 11. Electing Corporations

A. Corporations or other legal entities, not otherwise Parties, may elect to be

6

bound by this Plan by written agreement with Sponsor.

B. Election may be made only as to some types of Disputes, or only as to some persons, in the discretion of Electing Entity.

## 12. Effective Date

The effective date of this Plan shall be April 13, 2002 (except as otherwise determined by ACS subject to prior notice to plan participants); provided however, the effective date is January 28, 2002 for the DFAS Cleveland and Denver operations.

## 13. Severability

The terms of this Plan and the Rules are severable.    The invalidity or unenforceability of any provision therein shall not affect the application of any other provision. Where possible, consistent with the purposes of the Plan, any otherwise invalid provision of the Plan or the Rules may be reformed and, as reformed, enforced.

## 14. Administration

Sponsor shall appoint one or more persons to administer the Plan who shall be known as the "Dispute Resolution Plan Administrator." The Dispute Resolution Plan Administrator shall be responsible for the management and administration of the Plan.

## 15. Assent

Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Plan.



### A   C   S

## ACCEPTANCE OF, AND AGREEMENT TO,
## ACS' DISPUTE RESOLUTION PLAN

I have applied for employment with ACS. I recognize that ACS has adopted a Dispute Resolution Plan ("DRP") effective April 13, 2002 as the exclusive remedy for resolving the vast majority of workplace concerns and disputes. I understand and agree that the DRP will be the exclusive means for resolving any dispute or claim concerning my application for employment or the terms and conditions of my employment with Affiliated Computer Services. I understand that ACS' consideration of my application for employment and any offer of employment that may be made to me are contingent on my acceptance of the DRP as the exclusive means for resolving all disputes covered under the DRP. Any arbitration proceedings under the DRP shall be conducted by the American Arbitration Association or Judicial Arbitration and Mediations Services under ACS' Dispute Resolution Plan & Rules as published and in effect at the time a demand for arbitration is made. A decision and award of the arbitrator made under those rules shall be exclusive, final and binding on both parties, their heirs, executors, administrators, successors and assigns. The costs and expenses of the arbitration shall be borne as set out in the rules. I understand that by signing this document, I am waiving any right I might otherwise have to have a jury or judge resolve any claim I might have against Affiliated Computer Services.

I understand and agree that employment is at the mutual consent of both ACS and me. I understand that either ACS or I can terminate the employment relationship at will, at any time, for any reason or no reason, with or without cause or advance notice. I understand that nothing in the DRP implies otherwise and agree that no terms or conditions of the DRP should be interpreted as establishing any form of employment contract.

Dated: _7 / 30 / 02_

_ROGER BYRON HARGRAVE_
Printed Employee Name

_Roger B. Hargrave_
Signature

EXHIBIT
A-2

**People Making Technology Work™**

# *The ACS Team*



# Employee Guidebook

**Revised May 2002**



EXHIBIT
B

*The ACS Team*

# About This Guidebook

The ACS Employee Guidebook is intended to provide all ACS personnel with information about their rights and obligations as employees. Due to the widespread geographic coverage of ACS, and our numerous subsidiaries and affiliates, specific procedures and policies may vary by location. ACS reserves the right to change specific policies because of local laws, demands unique to the locations, or changes in laws and customs. ACS also reserves the right to revise, rescind and supplement the policies herein whenever ACS deems such changes appropriate, with or without notice.

The ACS *Employee Guidebook* outlines many of the policies, procedures, and benefits that will affect you and your working relationship with ACS. The information listed in this book is only a guide. Policies, procedures and benefits are reviewed continuously in an effort to improve our Company. There are sometimes changes or new policies and benefits that may not be included here.

**Employment is at the mutual consent of the employee and the employer. Either the employee or the employer can terminate the employment relationship at will, at any time, with or without cause or advance notice. This aspect of employment cannot be changed without an individual written employment contract signed by the employee and President & CEO of ACS.**

**Note: The contents of the Employee Guidebook are presented as a matter of information only. Changes do occur, so you should check with your manager should you have any questions or concerns regarding the policies and procedures set forth in this Guidebook. These policies and procedures are not binding employment conditions. The *Employee Guidebook* is not intended as an express or implied employment contract between ACS and any of its employees.**

1

## Inclement Weather

ACS policy is to remain open despite adverse weather conditions to meet its commitments to its customers. We are equally concerned for your safety. You must exercise your own judgment about personal safety. Corrective action will not be taken if you decide not to travel because of hazardous conditions. Be sure to follow the call-in procedure established in your department.

Whenever non-exempt employees are absent from or late for work or leave early because of inclement weather, they must charge such time away from work to accrued vacation or leave without pay. If sufficient vacation leave is not available to cover the absence, late arrival or early departure, leave without pay will be charged automatically. Exempt employees who miss an entire day of work due to inclement weather should charge it to accrued vacation to avoid being charged with an unpaid absence.

## Safety - First Aid

The Occupational Safety and Health Administration (OSHA), requires that ACS keep records of certain work-related illnesses and accidents that occur during the workday or on Company premises. Workers' compensation laws may also require that you report any illness or injury on the job, no matter how slight. If you are injured or become ill, please contact your manager immediately. If you fail to report an injury or illness, you may jeopardize your right to collect workers' compensation payments as well as health benefits. OSHA also provides for your right to know about any health hazards that might be present on the job. Should you have any questions or concerns, please contact your manager for more information.

## Dispute Resolution Plan (DRP)

ACS has adopted a Dispute Resolution Plan as the exclusive means of resolving the majority of work-related problems. Its purpose is to give employees flexible options for airing and settling almost every kind of workplace conflict...from minor, everyday misunderstandings to violations of legally protected rights. For any questions regarding this process or to file a complaint please contact Human Resources or the ombudsman at ombudsman@acs-inc.com or call 866-667-9733.

56

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER B. HARGRAVE, | * | |
| PLAINTIFF | * | CASE: 1:08-cv-00682-JDB |
| | * | |
| VS. | * | |
| | * | |
| ACS HCM & STATE & LOCAL | * | |
| SOLUTIONS, | * | |
| DEFENDANT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>ORDER</u>

Considering Defendant's Motion to Compel Arbitration and to Dismiss or in the Alternative, to Stay Proceedings Pending Arbitration, and Memorandum in Support Thereof;

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant's Motion to Compel Arbitration and to Dismiss or in the Alternative, to Stay Proceedings Pending Arbitration is granted and that Plaintiff's claims against ACS HCM Solutions be dismissed.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant be awarded all costs and attorneys' fees associated with preparing and submitting their Motion.

District of Columbia, this _____ day of _____, 2008.


_____
JUDGE